IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHANNON BROWN,

                Plaintiff,

    v.

STATE OF WISCONSIN, SCOTT WALKER           OPINION & ORDER
DR. CATHY SANDEEN, JASON BEIER,
DR. RICHARD M. KLEMME, Dean, University       16-cv-346-bbc[1]
of Wisconsin Extension, MATTHEW HANSON,
GRANT COUNTY, WISCONSIN, ROBERT KEENEY,
JOHN OR JANE DOES 1-25 ROBIN VOS, Speaker of
Assembly, and SENATOR MARY LAZICH, Senate
President,

              Defendants.

---

      Pro se plaintiff Shannon Brown was an assistant professor for the University of Wisconsin-Extension in Grant County in 2015 and 2016 in a tenure-track position. He alleges that, after he objected to "the use of faculty resources for non-educational programming," he was subjected to harassment and attempts to fire him. Dkt. 14, at ¶ 32. Ultimately, Brown gave notice that he "could no longer continue providing services" and left his employment with UW-Extension. *Id.* at ¶ 55.

      In his amended complaint, Brown raises eleven claims: (1) "due process," (2) "ex post facto law," (3) "state impairment of the obligation of contracts," (4) "hostile work environment," (5) "whistle-blower retaliation," (6) "speech retaliation," (7) "defamation," (8) "tortious interference with a contract," (9) "breach of contract," (10) "fraud," and (11) "privileges and immunities clause." Because Brown filed his amended complaint before any of

---

[1] Because Judge Crabb is on medical leave, I am issuing this order to prevent an undue delay in the progress of this case.

the defendants filed an answer, he was entitled to amend without leave of court, Fed. R. Civ. P. 15(a)(1), so I have ignored the original complaint. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

The court has jurisdiction to hear Brown's federal claims under 28 U.S.C. § 1331 (relating to federal questions) and his state law claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367. Brown also cites the diversity jurisdiction statute, 28 U.S.C. § 1332, but he does not include any allegations about the parties' citizenship in his amended complaint, so he has not satisfied the requirements for diversity jurisdiction.

In two separate motions, all of the defendants have moved to dismiss all of Brown's claims. One motion was filed by individuals and entities associated with the state of Wisconsin ("the state defendants"), Dkt. 18, and one was filed by defendants Grant County and Robert Keeney ("the county defendants"), Dkt. 24. The state defendants later filed what they called an "amended" motion to dismiss, Dkt. 35, but it is more accurately called a notice because it does not change the scope of the original motion. Rather, defendants simply wish to clarify that their motion applies to defendants Robin Vos and Mary Lazich because their original motion was ambiguous on that point.

In response to defendants' motions, Brown has abandoned his claim for "ex post facto law," so I need not consider that claim. For the reasons discussed below, I conclude that Brown has failed to state a claim upon which relief may be granted as to any of his other claims. The common problem with many of Brown's claims is that the allegations of wrongdoing are so vague that it is impossible to tell exactly what each defendant did to harm him. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." I will give Brown a final opportunity

to replead those claims that could be fixed with additional facts. If Brown chooses to amend his complaint, he must tell a simple, clear story about what each defendant did to violate his rights.

Brown alleges the following facts in his amended complaint. Dkt. 14.

ALLEGATIONS OF FACT

In 2015, plaintiff Shannon Brown moved from Pennsylvania to Wisconsin to take a job as an assistant professor for the University of Wisconsin-Extension in Grant County.[2]

---

[2] Brown does not explain either what the University of Wisconsin-Extension is or what Grant County's relationship to UW-Extension is. The website for UW-Extension contains the following information:

> The University of Wisconsin-Extension works in partnership with 26 UW System campuses, 72 Wisconsin counties, three tribal governments, and other public and private organizations to fulfill its public service mission. This is the "Wisconsin Idea" – extending the university's boundaries to the corners of the state.
>
> * * *
>
> Our programs serve children, retirees and working adults who need updated education to pursue new career paths. Flexible delivery methods, including the use of distance-learning technologies, let people enjoy the benefits of "anytime, anyplace" education.
>
> * * *
>
> UW-Extension is made up of four divisions: Cooperative Extension . . . Continuing Education, Outreach and E-Learning . . . Business and Entrepreneurship [and] Broadcasting and Media Innovations[.]

"University of Wisconsin-Extension, About Us," *available at* http://www.uwex.edu/about/ (last visited January 12, 2017).

Brown was "on a statutory-tenure track with a five-year, renewable contract pending tenure." Dkt. 14, at ¶ 21. (Brown does not describe any of the terms of the contract.)

In July 2015, less than two weeks after Brown started his job, the Wisconsin legislature and the governor passed 2015 Wisconsin Act 55, which imposed new budget cuts and repealed Wis. Stat. § 36.13, the statute governing tenure for state faculty.

After the repeal, defendant Cathy Sandeen, the chancellor of UW-Extension, visited Grant County, expressing the desire to "regionalize" the functions of UW-Extension. Around the same time, defendant Richard Klemme, the dean of UW-Extension, informed the faculty of "the need to re-focus educational programming in light of the recent budget reductions." Dkt. 14, at ¶ 28. (Brown does not provide any details in his amended complaint about the way that educational programming was changed.) In response to the changes, Brown complained to "supervisors and administrators" that his job "involved substantial, non-educational, administrative tasks for Grant County and significant County budget administrative oversight rather than educational programming." *Id.* at ¶ 29.

In mid-August 2015, Brown "was notified" (by whom he does not say) that individuals "from Grant County" wanted to terminate his employment. *Id.* at ¶ 30. Brown was later notified (again, by whom he does not say) that the county cannot "summarily fire" a faculty member. *Id.* at ¶ 31. In response, Brown "provided discrete, written notice of the use of faculty resources for non-educational programming to supervisors." *Id.* at ¶ 32.

"Grant County continued [the] abuse, harassment, bullying, and intimidation of Plaintiff through September and October including statements at public meetings." *Id.* at ¶ 34. (Brown does not provide any additional description of the alleged conduct. His use of

the word 'continued' suggests the existence of earlier harassment, but he does not provide any examples.) The "Administration" for UW-Extension was "fully aware" of this conduct, but it "took no apparent curative or prophylactic action." *Id.* at ¶ 35.

In late November 2015, Brown asked the "Administration" for reassignment because of "the hostile work environment" and because of "continuing demands to support significant, non-educational programming, in apparent conflict with law and policy, with threats of job loss for 'non-cooperation.'" *Id.* at ¶ 35. When no reassignment was available, Brown asked for severance pay instead. Defendant Matthew Hanson, the southwest regional director, informed Brown "that no mechanism was available to him to permit severance," but directed Brown to contact defendant Jason Beier, assistant vice chancellor for human resources. *Id.* at ¶ 37. However, Beier stated that "no mechanism existed for severance without a lawsuit." *Id.* at ¶ 38.

In January 2016, defendant Hanson admitted to Brown that he "knew of the pending reorganization plan and faculty regionalization" before Brown was hired. *Id.* at ¶ 40.

At an unspecified time, "Grant County made comments about only hiring 'locals' in the future." *Id.* at ¶ 41. In January 2016, the county "worked directly" with defendant Hanson "to re-hire a 'local' staff member" after a staff member from out-of-state left. *Id.*

On March 16, 2016, Brown was scheduled for an annual faculty review. Ten minutes before the review was scheduled to begin, Brown "was notified" in a "closed-door meeting" that "the County" was going to attend the review, that "the County" was "claiming issues" with Brown, and that the "University of Wisconsin Extension Administration" was threatening the possibility that Brown could lose his appointment under the "60 day clause" of his contract. *Id.* at ¶ 44. (Brown does not explain what the "60-day clause" is.) Brown

5

chose not to proceed with the faculty review, but he asked to be present at any meeting if he was going to be discussed.

Two hours later, "supervisory faculty" told Brown that his "continuing with the County and Extension" would be discussed. *Id.* at ¶ 46. The "Administration" and defendant Robert Keeney "immediately" held a hearing about the "issues" raised by unknown individuals. *Id.* (Brown does not provide Keeney's title or otherwise explain who he is. The county defendants say that Keeney is the Grant County board chairman.)

At the "hearing," defendant Hanson began questioning Brown, but Brown stated that he would not answer any questions. Defendant Keeney "admitt[ed] that no material issues existed with the Plaintiff" and that there were "challenges posed by the recent budget cuts" that required "changes." *Id.* at ¶ 49. However, Keeney "insinuated" that Brown had submitted an "improper" invoice to the county, even though he knew the allegation to be false. *Id.* at ¶¶ 49-51. Staff members attending the hearing objected to the insinuation.

Brown discussed "the situation" with "faculty representatives." *Id.* at ¶ 53. After that discussion, Brown determined that using the faculty grievance process would be "futil[e]." *Id.*

Two days later, Brown left for a vacation. When he returned, he submitted a written notice to the "Administration" that he "could no longer continue providing services." *Id.* at ¶ 55. Defendant Hanson accepted the notice.

## ANALYSIS

### A.  Due process

In his amended complaint, Brown identifies two ways that his due process rights were violated: (1) the repeal of Wis. Stat. § 36.13, a statue governing tenure and granting other

rights to state faculty members; and (2) the failure to provide adequate notice before a hearing regarding Brown's employment on March 16, 2016. Brown's amended complaint does not state a claim under either theory.

Much of Brown's argument that he was denied due process seems to rest on an assumption that the due process clause is a general entitlement to be treated fairly by all government officials in every circumstance. Although it is certainly true that fairness is a primary goal of the due process clause, *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 24 (1981), a claim under that clause has particular elements that Brown largely ignores. In particular, a Brown must show two things to prevail on any claim under the due process clause: (1) he was deprived of "liberty" or "property" within the meaning of the clause; and (2) he did not receive the process he was due before or after the deprivation occurred. *Abcarian v. McDonald,* 617 F.3d 931, 941 (7th Cir. 2010). Neither of Brown's due process claims satisfies both elements.

### 1.  Repeal of Wis. Stat. § 36.13

Brown's first due process claim regarding the repeal of § 36.13 fails for the obvious reason that a person is not due any individualized process in the context of legislation. *Dibble v. Quinn*, 793 F.3d 803, 813-14 (7th Cir. 2015); *Muscarello v. Winnebago Cty. Bd.*, 702 F.3d 909, 914 (7th Cir. 2012). Rather, as the courts in *Muscarello* and *Dibble* pointed out, the Supreme Court concluded long ago that a person who may be affected by a change in the law must rely on the legislative process to protect his interests. *Bi–Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 445 (1915) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that

they can be in a complex society, by their power, immediate or remote, over those who make the rule."). In *Dibble*, 793 F.3d at 810, the court applied this rule to reject the claim of a government employee who was challenging a legislative change to the terms of his employment. Because that is exactly what Brown is trying to do in this case, I am dismissing his due process claim as it applies to his challenge to § 36.13.

### 2.  Notice of March 16, 2016 hearing

Brown's claim that he did not receive sufficient notice before the March 16, 2016 hearing fails on the first element, which requires him to show that he was deprived of a "property interest" or "liberty interest." *Abcarian*, 617 F.3d at 941. A public employee may have a property interest in his job if he has a "legitimate expectation of continued employment," which often is shown "through contractual language limiting the [employer]'s discretion to fire" him. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 686 (7th Cir. 2014). Brown does not say in his amended complaint whether his contract or anything else limited the ability of his employer to fire him. However, in one of his briefs, he alleges that UW-Extension policy prohibits even probationary employees like him from being dismissed without just cause, Dkt. 31, at 32, which is the type of language that generally is sufficient to create a property interest. *Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008). A plaintiff may elaborate his allegations in a brief in order to defeat a motion to dismiss, *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015), so I will accept this allegation as true for the purpose of the pending motions.

This does not get Brown very far because his amended complaint does not include allegations that any of the defendants *deprived* him of whatever property interest he had. In particular, he does not allege that any of the defendants fired him. Rather, he alleges that *he*

chose to stop working for UW-Extension. This is a problem because "[a] public employee who voluntarily resigns cannot complain about a lack of due process." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010).

Brown offers two reasons why his decision to leave his employment is not fatal to his due process claim. First, he says that his departure from UW-Extension was not truly voluntary. Second, he says that the end of his employment at UW-Extension was not the only harm he suffered. In particular, he says in his brief that "manufactured issues" harmed his professional reputation and affected his future employment. Dkt. 31, at 33. Brown did not include either of these claims in his amended complaint, but, again, he was entitled to include new allegations in his brief, *Smith*, 803 F.3d at 311, so I will consider whether the new allegations state a claim upon which relief may be granted.

### 3.  Constructive discharge/coerced resignation

Brown contends that his decision to leave UW-Extension should not be treated as a voluntary resignation because he was constructively discharged. Brown relies solely on Wisconsin state law to support his claim for constructive discharge, *e.g.*, *Strozinsky v. Sch. Dist. of Brown Deer*, 2000 WI 97, 237 Wis. 2d 19, 614 N.W.2d 443, but Brown's due process claim arises under federal law, so it is federal law that controls. *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007). Federal law does recognize a claim for constructive discharge under the due process clause, but Brown has not stated a claim under that standard.

To prevail on a constructive discharge claim, a plaintiff must show that he was subjected to "harassing behavior sufficiently severe or pervasive to alter the conditions of her employment, and that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Levenstein v. Salafsky*, 414 F.3d 767, 774 (7th Cir.

2005) (internal quotations omitted). "Working conditions for constructive discharge must be even more egregious than those that would support a finding of a hostile work environment; absent extraordinary circumstances, an employee is expected to remain employed while seeking redress." *Witte v. Wisconsin Dep't of Corr.*, 434 F.3d 1031, 1035-36 (7th Cir. 2006) (overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)).

Although Brown alleges that he was "harassed" and "bullied," he includes no allegations in his amended complaint or his briefs suggesting that his treatment was "egregious" or "extraordinary." In any event, Brown does not allege that he quit because of any bullying that he faced. In fact, it is unclear from the argument sections of Brown's briefs exactly why he believes he was constructively discharged. However, in his "Summary of Factual Background" in his brief in opposition to the state defendants' motion to dismiss, he alleges that he was being "forced to violate the law as a condition of his employment" by "misreport[ing] significant amounts of time designated by state and federal law for educational programming but in fact spent on administrative services for Grant County." Dkt. #31, at 6.

This allegation seems to evoke a slightly different theory, "coerced resignation," which "may in certain circumstances form the basis of a due-process claim." *Palka*, 623 F.3d at 453. "[C]oerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Id.* In Brown's case, he seems to be alleging that he faced the choice of resigning or breaking the law.

The claim that I have just described bears no resemblance to the claim in Brown's amended complaint and it has no relevance to much of the argument in Brown's brief related

10

to his due process claim. If Brown's claim is that defendants forced him to resign because they were requiring him to break the law, then it is irrelevant what kind of notice he received before the March 16, 2016 hearing because Brown's claim would be that he was entitled to resign as soon as defendants began requiring him to break the law, which was allegedly months before the hearing occurred. Further, the point of the hearing was not to determine whether defendants were requiring him to submit false reports. And even if that had been the point of the hearing, the allegations in the amended complaint suggest that Brown forfeited any claim about the adequacy of the hearing he received by resigning before the process could be completed. *Levenstein*, 414 F.3d at 774–75 ("Once . . . a process starts, for whatever reason, it is incumbent on the University to decide whether the complaints have merit, and if so, to decide what remedy is appropriate. If the complaints were made in bad faith or cannot be supported by the facts, the accused professor will be exonerated, which is the best that can be done even if he might have wished that the process had never begun in the first place.").

Although Brown's amended complaint does not state a claim under his theory that defendants failed to provide him adequate notice of the hearing in March 2016, it may be possible for him to proceed under a theory that defendants coerced him into resigning by requiring him to break the law. Neither side cites any relevant authority on the issue, but it is reasonable to infer at the pleading stage that being required to violate the law could qualify as a coerced resignation.

The general rule is that a plaintiff should be given leave to amend when his complaint is dismissed for failing to provide sufficient notice of a claim. *U.S. v. $196,969.00 U.S. Currency*, 719 F.3d 644, 647 (7th Cir. 2013) ("[P]arties usually get a chance for a do over of a complaint that fails to state a claim but may be reparable."). Although Brown has already

11

had an opportunity to file an amended complaint and provide additional allegations in his briefs, because he is proceeding pro se, I will give him one more chance to raise a claim that one or more of the defendants violated his right to due process by coercing him into leaving his employment.

Although Brown may have identified a potentially viable legal theory, this proposed claim still has a number of problems that he will have to fix if he chooses to file another amended complaint. First, even in his brief, Brown does not explain exactly what he was required to do that violated the law. He says that he was required to "misreport" his time, but he does not explain what that means and he does not identify any laws that prohibited whatever he was being required to do. Brown will have to explain this.

Second, Brown does not identify a particular defendant who required him to break the law. This is a problem because a defendant cannot be held liable for a constitutional violation unless he or she was personally involved in the alleged conduct. *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012). Further, under federal pleading rules, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). If Brown does not connect the alleged constitutional violation with a particular defendant, the claim will not survive. He cannot sue the state of Wisconsin for a violation of the due process clause or any other constitutional provision because the state is not a "person" within the meaning of 42 U.S.C. § 1983, the statute that authorizes a cause of action for constitutional violations. *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012). If Brown wishes to bring a claim against a municipality such as Grant County, he will have to allege facts that the county has a policy,

custom, or practice that caused the constitutional violation. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016), allegations that his amended complaint are lacking.

Finally, I note that there is some tension between a claim that Brown was coerced into resigning because he was forced to break the law and his allegation that he decided to leave his job after the March 16, 2016 hearing. Brown does not allege that anyone asked him to break the law at the hearing, so this calls into question his true reason for leaving. Some of Brown's allegations suggest that he left because he concluded that his termination was a foregone conclusion. Dkt. 14, at ¶ 53 (after March 16, 2016 hearing, Brown determined that using faculty grievance process would be "futil[e]").

None of the parties discuss these inconsistencies in their briefs, so it would be premature to resolve the issue now. However, Brown should be prepared to clarify his allegations if he chooses to file another amended complaint. If Brown intended to assert a claim that he was constructively discharged because one of more of the defendants made it clear to him that his termination was imminent, that claim would have failed as well. In the context of Title VII of the Civil Rights Act of 1964, a former employer may bring a claim for constructive discharge "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated. *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002).  I am not aware of any authority applying this standard to a claim under the due process clause, but even if it does apply, Brown has not alleged facts supporting the view that his termination was inevitable. If Brown intends to raise that type of constructive discharge theory in a new complaint, he will have to explain more clearly why he believed even before the process was complete that he was going to be fired.

### 4. Stigma claim

The second due process claim that Brown raises for the first time in his briefs is that defendants harmed his reputation. Reputational harm may trigger the protections of the due process clause under certain circumstances. *Meade*, 770 F.3d at 688; *Abcarian*, 617 F.3d at 941. Brown calls this a "property right," but case law recognizes reputational harm as potentially implicating a person's liberty, not his property. *Meade*, 770 F.3d at 688; *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F.3d 746, 753 (7th Cir. 2012). This is because reputational harm may affect a person's ability to practice his chosen occupation.

To prevail on a due process claim involving reputational harm, a plaintiff must do more than show that a defendant defamed him and limited his future job prospects. *Hojnacki v. Klein–Acosta*, 285 F.3d 544, 548 (7th Cir. 2002) ("Defamation alone, even if it renders it virtually impossible for the individual to find new employment in his chosen field . . . is not enough to invoke the procedural safeguards of the Fourteenth Amendment.") (internal quotations, citations and alterations omitted). Rather, he must also show that the defendants' statements altered his legal status, "such as [by] government deprivation of a right previously held." *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015). Brown's allegations are too vague to determine whether any of the defendants may have defamed him, but even if I assume that they did, this claim fails because Brown has not identified in his amended complaint or any of his briefs how any comments by defendants may have altered his legal status. Again, I will give Brown one more chance to amend his complaint to state a claim under this theory.

**B. Contracts Clause**

The contracts clause of the United States Constitution states that "[n]o state shall enter into any . . . Law impairing the Obligation of Contracts." U.S. Const . art. I, § 10. A claim under this clause has two elements: (1) a contractual relationship with the state; and (2) a change in law that substantially impaired the contractual relationship. *Council 31 of the Am. Fed. of State, Cty. and Mun. Emp., AFL-CIO v. Quinn*, 680 F.3d 875, 885-86 (7th Cir. 2012).

Brown does not explain in his amended complaint how he believes any of the defendants violated the contracts clause. However, I understand him to be arguing in his brief that defendants Scott Walker (the governor), Robin Vos (the Assembly speaker), and Mary Lazich (the Senate president) violated the clause by repealing after he was hired Wis. Stat. § 36.13, which relates primarily to the rights of state employees with tenure. Brown has abandoned his claim under the contracts clause as to the county defendants. Dkt. 30, at 1.

There is a threshold question whether defendants Walker, Vos, and Lazich can be sued for violations of the contracts clause. The state defendants contend that they have immunity for any legislation enacted or repealed. Brown questions this, but asks for leave to replead if he has named the wrong defendants. Because I conclude that this claim fails on its face without regard to the defendant being sued, I need not resolve this issue. *Hester v. Indiana State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013) (court may sidestep immunity issue to dismiss claim on merits).

Brown says that his contract with the state was impaired by the repeal of § 36.13 because he "would have a statutory remedy under 36.13(5)," Dkt. 31, at 44, but for what he

does not say. Regardless how he believes § 36.13(5) would have aided him, a review of that provision shows that it has no bearing on this case:

> Procedural guarantees. Any person having tenure may be dismissed only for just cause and only after due notice and hearing. Any person having a probationary appointment may be dismissed prior to the end of the person's contract term only for just cause and only after due notice and hearing. The action and decision of the board in such matters shall be final, subject to judicial review under ch. 227. The board and its several faculties shall develop procedures for the notice and hearing which shall be promulgated by rule under ch. 227.

Wis. Stat. § 36.13 (5) (2013-14).

Brown admits that he did not have tenure at any time while he was employed by the state of Wisconsin, so any protection provided in the statute to tenured staff could not have helped him. This leaves the provision that a probationary employee could not be dismissed before the end of his contract without just cause after notice and hearing. However, there are two obvious problems with any reliance by Brown on that provision.

First, as discussed above, Brown's allegations suggest that he was not dismissed, but instead made his own choice to leave. Thus, even if the repeal of § 36.13 had some effect on Brown's contractual rights, it does not appear that he was personally harmed by the change.

Second, the contracts clause does not guarantee that a person will retain the benefit of any statutory rights he has at a particular time. *Phelps v. Bd. of Educ. of Town of W. N.Y.*, 300 U.S. 319, 322 (1937). Rather, as is clear from the text, the clause prohibits the impairment of contractual rights. In this case, the repeal of Wis. Stat. § 36.13 simply removed the protections of a statute. Brown does not describe the contents of his contract, but whatever rights it guaranteed, Brown points to no new law that would have allowed state officials to disregard or otherwise impair the contract. In other words, if Brown's contract (or UW-

16

Extension policy) gave him the right not to be fired without just cause, then he would have had the same right even after the repeal of § 36.13, or at least Brown does not identify any law that impaired such a contractual right. Alternatively, if Brown did not have a contract that included such a right, then the repeal of § 36.13 could not have impaired a contractual right that he never had.

Brown makes an alternative argument that

> statutory tenure and the mutually sought 10-15 year commitment were material factors in Plaintiff accepting the faculty appointment, withdrawing as a finalist from another position, closing two businesses, and moving from Pennsylvania to Wisconsin. Plaintiff also pleads damages such as loss of state pension-eligibility, loss of faculty appointment, and loss of retirement vestment.

Dkt. 31, at 43 (citations omitted).

Brown does not explain how this discussion is relevant to a showing that any defendant violated his rights under the contracts clause. Presumably, Brown means to argue that the repeal of § 36.13 impaired rights that he would have had after he acquired tenure. If that is his argument, it has no legal merit. Brown acknowledges that his only contract with the state was "a five-year, renewable contract *pending* tenure." Dkt. 14, at ¶ 21 (emphasis added). Regardless what Brown's hopes and expectations for the future were when he took the appointment, the repeal of § 36.13 could not impair a contract that did not yet exist. Further, this argument suffers from the same flaws as Brown's other argument. In particular, Brown does not allege that the repeal of § 36.13 removed any rights to tenure that were guaranteed independently by contract and he does not point to any rights in § 36.13 that any of the defendants violated.

Because I see no way that Brown could save this claim with an amended complaint, I am dismissing it without giving him leave to amend. In addition, because Brown does not discuss defendants Walker, Vos, or Lazich in the context of any other claim and I do not see how those three defendants could be held liable for any of the other alleged conduct in the amended complaint, I am dismissing the complaint with prejudice as to those three defendants.

## C.  Hostile work environment

"Hostile work environment" is the term used in case law to describe severe or pervasive harassment that an employee suffers because of his race, sex, religion, or other characteristic protected under the Constitution or civil rights statutes such as Title VII of the Civil Rights Act of 1964. *E.g.*, *Zayas v. Rockford Mem'l Hosp*., 740 F.3d 1154, 1159 (7th Cir. 2014); *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012); *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011). Both sets of defendants contend that Brown does not state a claim under a hostile environment theory because he does not allege that he was harassed for a reason protected by the law.

In his opposition briefs, Brown concedes that he has not stated a claim under this theory, but he asks for leave to replead this claim and make it into two claims. First, he says that he "seeks leave to amend to plead additional facts illustrating the correlation between Plaintiff's academic-needs-assessment noting potentially underserved educational programming in protected-class communities in Grant County including Amish (religion) and Latinos (national origin) and discriminatory acts by Grant County." Dkt. 31, at 45. Second, he says that he "seeks leave to amend to aver strong correlations between Plaintiff's educational programming in areas apparently controlled by an 'opposition' political party and

retaliatory acts by the Ag & Extension Committee who are all reputedly the most extreme members of a different political party." *Id.* at 46.

Brown's description of his proposed new claims could be clearer, but I understand him to be alleging that: (1) defendant Grant County discriminated against him because he served the Amish and Latino communities; and (2) defendant Grant County discriminated against him because of his political beliefs. I will consider each claim in turn.

### 1. Associational discrimination

As to the first proposed claim, "some courts have recognized that a plaintiff may state a discrimination claim under the equal protection clause of the Fourteenth Amendment or Title VII of the Civil Rights Act that is based on aiding and associating with people of a protected class." *Barlass v. Carpenter*, 2010 WL 3521589, *5 (W.D. Wis. 2010) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138-39 (2d Cir. 2008); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999); *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986).) However, I am not aware of any binding authority in this circuit on the question. *C.f. Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) ("This court has not yet definitely ruled on whether discriminating against a person because they are involved in an interracial relationship constitutes race discrimination in violation of Title VII").

Some courts that have recognized this type of claim have stated that it applies only to "significant" relationships, such as marriage. *E.g.*, *Larochelle v. Wilmac Corp.*, No. 12-CV-5567, 2016 WL 5404474, at *20 (E.D. Pa. Sept. 27, 2016). Other courts have held that a plaintiff bringing an associational discrimination claim still must show that the defendant

19

discriminated against the plaintiff because of *his* race. *E.g.*, *Floyd v. Amite Cty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009). For example, if a white plaintiff alleges that he was discriminated against because of an interracial relationship with a black person, the plaintiff must show that the defendant would not have discriminated against a black person in the plaintiff's situation. None of the parties addressed these issues in their briefs, so it would be premature for the court to do so now. (The state defendants did not address the merits of Brown's claims in their reply brief and the county defendants did not consider the possibility of an associational discrimination claim.)

However, even assuming that Brown has identified a viable legal theory, he has not provided enough information in his briefs to provide fair notice of this claim, as required by Federal Rule of Civil Procedure 8. In particular, he does not identify the allegedly discriminatory conduct or the particular defendants who engaged in that conduct. Also, he does not provide any details about the nature of his relationship with the protected groups or why he believes those relationships prompted a particular defendant to discriminate against him. Accordingly, I am dismissing this claim, but I will give Brown an opportunity to correct the problems in an amended complaint.

### 2. Political discrimination

As to Brown's second proposed claim, it is well established under the First Amendment that public employers may not discriminate against an employee for his political beliefs "unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 64 (1990). Again, however, Brown has not provided fair notice of this claim. He does not identify which defendants engaged in political discrimination and what each defendant did to discriminate against him. In addition, he does

20

not explain what his political beliefs are or why he believes that his political beliefs prompted a particular defendant to discriminate against him.

I will give Brown leave to attempt to correct these defects in an amended complaint. Defendants remain free to argue at a later stage of the case that either the associational discrimination claim or the political discrimination claim is legally insufficient.

## D. Retaliation

Brown identifies two different types of retaliation in his amended complaint, "whistle-blower" and "speech." He does not identify a difference between the two types, at least as to federal law. The First Amendment prohibits a public employer from retaliating against an employer for speaking out in certain circumstances. In particular, a public employee has a right to speak as a citizen on matters of public concern unless the right is outweighed by a legitimate government interest. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386 (2011). Although there are several federal whistleblower statutes, *e.g.*, 31 U.S.C. § 3730(h) (prohibiting retaliation for reporting fraud against the federal government); 12 U.S.C. § 1831j(a) (prohibiting retaliation for providing information to banking agencies), Brown does not cite any such statutes in his amended complaint or his briefs, and I am not aware of any that would apply in this case. Accordingly, I am limiting my analysis of Brown's federal retaliation claim to the First Amendment.

The state defendants contend that Brown's First Amendment retaliation claim must be dismissed for two reasons: (1) Brown spoke as an employee rather than as a citizen, so his speech is not protected under *Garcetti v. Ceballos*, 547 U.S. 410 (2006); and (2) Brown does not identify any retaliatory acts against him that the state defendants took because of his

speech. The county defendants contend that Brown's alleged speech is not protected because it does not raise an issue of public concern.

Brown's only description in his amended complaint of the speech at issue is paragraph ¶ 29: "[Brown] discretely notified supervisors and administrators that the faculty appointment actually involved substantial, non-educational, administrative tasks for Grant County and significant County budget administrative oversight rather than educational programming." The county defendants' contention and the state defendants' first contention both rely on the premise that Brown's speech relates to dissatisfaction about the type of work he was required to do. That sort of "personal grievance" is not protected by the First Amendment. *Meade*, 770 F.3d at 684.

In his brief, Brown insists that he was complaining about "the significant misdirection of resources from educational programming to county administrative tasks." Dkt. 31, at 52. As Brown points out, the misuse of public funds can be a matter of public concern, *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003), even if part of the motive for exposing the misuse is personal. *Kristofek v. Village of Orland Hills*, 712 F.3d 979 (7th Cir. 2013). Brown does not allege that part of his job duties included giving advice about the allocation of resources, so it is reasonable to infer at the pleading stage that he was speaking as a citizen rather than as an employee.

Although Brown has identified a potentially viable theory, he has not stated a claim under the First Amendment, even if I consider the allegations that he added in his brief. Again, the problem is that his allegations are too vague to satisfy federal pleading requirements. For example, Brown does not explain what he means when he says that he complained about funds being "misdirect[ed]." That is an inherently ambiguous term. It

22

could mean as defendants suggest that Brown simply was complaining because he did not like to perform administrative tasks. Or it could mean something implicating the public interest that involved actual misconduct by officials. But without more information about exactly what these officials were doing, who was doing it, what particular statements Brown made about this conduct and to whom he made them, I cannot say that Brown has plausibly alleged that he engaged in protected speech. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement.").

A second problem with this claim is that Brown has not adequately identified an adverse act by a particular defendant. As to this element, the question is whether a defendant's conduct would have deterred a person of "ordinary firmness" from speaking out in the future. *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622-23 (7th Cir. 2012); *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). As I noted in the context of Brown's claims under the due process clause and the contracts clause, Brown has not plausibly alleged that any defendant forced him to resign, so I cannot treat his choice to leave as an adverse act.

Alternatively, Brown alleges that "Grant County" engaged in "abuse, harassment, bullying, and intimidation" Dkt. 14, at ¶ 34, and that the "Administration" for UW-Extension was "fully aware" of this conduct, but it "took no apparent curative or prophylactic action." *Id.* at ¶ 35. But there are multiple problems with this allegation as well. Although harassment can be the basis of a retaliation claim if the harassment is sufficiently severe or pervasive, *Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009), again, Brown's allegations are too vague to satisfy pleading standards. Brown says nothing in his amended complaint or briefs about the particular conduct that he found to be harassing, with the

23

exception of one allegation about unspecified "statements at public meetings." *Id.* at 34. Most speech does not satisfy the standard for retaliation under the First Amendment, even if the speech is disparaging. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1107-08 (7th Cir. 2012); *Hutchins v. Clarke*, 661 F.3d 947, 956-57 (7th Cir. 2011); *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869-70 (7th Cir. 2009). Without providing more information about the harassment to which he was allegedly subjected—and the identities of the individuals who allegedly harassed him—Brown cannot proceed on this claim.

Brown's theory of retaliation against the state defendants has yet another problem, which is that their involvement in the alleged harassment is unclear. Brown does not allege that any of the state defendants participated in the harassment; rather, he alleges that unspecified members of the "administration" for UW-Extension knew about the harassment and failed to stop it. That allegation does not state a claim against the state defendants under the First Amendment, even assuming that Brown was subjected to severe or pervasive harassment because he engaged in protected speech.

As an initial matter, Brown's vague reference to the "administration" does not provide notice to each defendant whether he or she was involved in the alleged conduct. If Brown is using the term "administration" to mean the state of Wisconsin, then that claim would fail, again, because a plaintiff cannot sue a state under 42 U.S.C. § 1983. Second, a defendant cannot be held liable under the First Amendment for someone else's conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Thus, the state defendants' alleged failure to act despite knowledge of someone else's retaliatory conduct would not violate the First Amendment; rather, Brown would have to show that one or more of the state defendants had

24

the ability and authority to intervene but refused to do so *because* they objected to Brown's speech. *Id.* ("[P]urpose rather than knowledge is required to impose . . . liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities."). In other words, Brown would have to meet all the elements for a retaliation claim against the state defendants, including that they intended to retaliate against him. *Wilson v. Greetan*, 571 F. Supp. 2d 948, 955 (W.D. Wis. 2007).

In sum, Brown has not stated a claim for retaliation under the First Amendment against any of the defendants. However, I will give him an opportunity to file an amended complaint that corrects the deficiencies identified in this order and otherwise satisfies the requirements of the Federal Rules of Civil Procedure.

## E.  Privileges and Immunities Clause

Under the privileges and immunities clause of the Constitution, "[t]he citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const., art. IV, § 2, cl. 1. The purpose of the clause is to "plac[e] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *McBurney v. Young*, 133 S.Ct. 1709, 1714 (2013) (internal citations and quotations omitted).

In his amended complaint, Brown contends that "Defendants" violated this clause by "discriminat[ing] against [him] as an 'outsider,' being from a different state, while treating 'locals' preferentially, for example, the latter as evident by the actions to re-hire a local staff member in January 2016 after departure of an out-of-state faculty member." Dkt. 14, at ¶ 72.

Also, Brown alleges that, at an unspecified time, "Grant County made comments about only hiring 'locals' in the future." *Id.* at ¶ 41.

The state defendants seek dismissal of this claim for two reasons. First, they contend that "Hanson was not the defendant who made the comment about only hiring 'locals.'" Dkt. 25, at 20. (Brown did not limit this claim to defendant Hanson, but defendants likely focus on Hanson because of Brown's allegation that the county "worked directly" with defendant Hanson "to re-hire a 'local' staff member" after a staff member from out-of-state left. Dkt. 14, at ¶ 41.) Second, they contend that Brown has not identified how he was harmed by any preference for "locals."

The county defendants also raise two grounds for dismissal. First, they contend that the privileges and immunities clause does not apply to public employment. Second, they contend that Brown has not identified any way that they discriminated against *him* because he was from another state.

Because it has the potential to be dispositive, I will consider first the county defendants' contention that the privileges and immunities clause does not apply to public employment. The county defendants admit that there is no controlling authority on this question. The Supreme Court has held that the clause does apply to restrictions on *private* employment, *Hicklin v. Orbeck*, 437 U.S. 518, 529 (1978), but in *United Building & Construction Trades Council of Camden County v. Mayor and Council of City of Camden*, 465 U.S. 208, 219 (1984), the Court stated in dicta that "[p]ublic employment . . . is qualitatively different from employment in the private sector; it is a subspecies of the broader opportunity to pursue a common calling." Relying on that dicta, the Court of Appeals for the Third Circuit has held that "direct public employment is not a privilege or fundamental right

26

protected by the Privileges and Immunities Clause of Article Four" because the inability to work for the government does not prevent someone from pursuing his occupation to the same extent as a ban on private employment. *Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 270 (3d Cir. 1994). The county defendants do not cite any other court that addressed that issue and they do not develop their argument beyond their citation to *Salem*. My own research uncovered a small number of district courts that have followed *Salem*, with little or no additional analysis. *U.S. ex rel. Eisenstein v. City of N.Y.*, No. 03 CIV. 413 (DAB), 2006 WL 846376, at *7 (S.D.N.Y. Mar. 31, 2006); *Lai v. New York City Gov't*, 991 F. Supp. 362, 365 (S.D.N.Y. 1998).

Even if the Third Circuit is wrong, it seems unlikely that the privileges and immunities clause extends so far as to apply to *one* employer's treatment of out-of-state employees. However, I need not belabor the issue now. Even if a claim under the privileges and immunities clause would fail, Brown's claim could be reframed easily as a claim under the equal protection clause, which does apply to public employment. *E.g.*, *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). Accordingly, I will move on to defendants' other arguments.

The county defendants' second contention and both of the state defendants' contentions rely on essentially the same premise: Brown has not identified any way in which any of the defendants discriminated against him because he was from another state. Rather, Brown's allegations suggest at most that some officials may have decided to hire "locals" after he was hired.

Defendants are correct. Brown does not allege in his amended complaint that any defendant discriminated against him in particular because he is from another state. In one of

his briefs, he says that several employees from other states "left faculty positions in Grant County in just the last five years" and that one faculty member "was replaced by a local with active participation and direction of County actors." Dkt. 31, at 60. Both of these allegations are about the treatment of other employees, not Brown. Brown does not have standing to raise the claims of another party. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

However, at the very end of the same brief, Brown alleges that "this discriminatory animus partially explains the bizarre behavior of Defendants leading to Plaintiff's loss of the faculty position after only nine months." Dkt. 31, at 61. He does not explain further, but presumably the "bizarre behavior" is the alleged harassment that he suffered. If Brown means to allege that defendants subjected him to harassment because he is from another state, then that claim fails for reasons similar to his other discrimination and retaliation claims. In particular, he does not identify what the harassment was, who subjected him to the harassment and why he believes a particular defendant harassed him because he was from another state. Accordingly, I am dismissing this claim along with the other claims, but I will give Brown leave to amend his complaint.

## F. State law claims against the state defendants

Brown brings state law claims for (1) "whistle-blower retaliation," (2) defamation, (3) tortious interference with a contract, (4) breach of contract, and (5) fraud. The state law defendants contend that all of these claims must be dismissed. As to the state of Wisconsin, defendants contend that sovereign immunity bars all of these claims. As to the individual state defendants, defendants contend that Brown did not comply with Wis. Stat. § 893.82, which gives a plaintiff suing a state official 120 days to serve on the attorney general "written notice of a claim stating the time, date, location and the circumstances of the event giving

rise to the claim for the injury, damage or death and the names of persons involved." Wis. Stat. 893.82(3).

Defendants are correct that an individual plaintiff cannot bring state law claims against the state in federal court under well-established principles of sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984). Brown does not develop any argument to the contrary, so I need not discuss this issue further.

As to the individual state defendants, Brown does not allege in his complaint that he complied with § 893.82(3) and he admits in his opposition brief that he did not comply. Dkt. 31, at 23. Wisconsin law "requires that a claimant strictly comply with the statute in order to proceed with his or her claim." *Kellner v. Christian*, 197 Wis. 2d 183, 194-95, 539 N.W.2d 685, 689 (1995). Failure to comply requires dismissal of the claim. *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted.").

Despite his admission that he did not comply and his acknowledgement that § 893.82 requires strict compliance, Brown devotes several pages of his opposition brief to arguments that this court should not enforce the notice of claim requirement. First, he says that the state defendants did not mention the notice of claim requirement when he spoke to their counsel around the time he filed this lawsuit. Brown does not explain the relevance of this allegation, but, presumably he means to argue that the state defendants forfeited an objection by remaining silent. Wisconsin courts have held that the requirements of § 893.82 cannot be waived. *Tierney v. Lacenski*, 114 Wis. 2d 298, 304, 338 N.W.2d 522, 525 (Ct. App. 1983) ("Section 893.82 is not merely a procedural statute that may be waived by the state or its employee. Compliance with sec. 893.82 is necessary to warrant recovery against a state

employee."). But even if the issue were subject to waiver, the state defendants raised the issue in court at the first opportunity they could—in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There is no requirement in the law to raise issues in private conversations between the parties.

Second, Brown says that he filed this lawsuit before the 120-day deadline expired, but it is not clear why he believes that matters. If he means to argue that his complaint in this case should serve as a substitute for the notice of claim, that argument has no merit. Section 893.82 identifies the way that a plaintiff must provide notice of the claim; the statute does not give discretion to courts to determine that an alternative method is sufficient. *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010) ("Badger Catholic concedes that it did not follow the state's procedures but contends that noncompliance should be excused because the state knew what relief it wants. We agree with the district court, however, that Wisconsin does not have a doctrine of constructive compliance; it requires strict performance of all statutory conditions to recovering on a contract with the state."). Even if the statute allowed room for substantial compliance, Brown would not meet that standard. A lawsuit is exactly what the notice of claim statute is designed to avoid, Wis. Stat. § 893.82(1)(b) (purpose of law is to "[p]rovide the attorney general with an opportunity to effect a compromise without a civil action or civil proceeding"), so it would make no sense to construe § 893.82 in a way that allowed a lawsuit to satisfy the notice requirement. For that reason, I do not agree with Brown's argument that it is "absurd" to apply the notice of claim requirements in this case. Dkt. 31, at 24.

Next, Brown cites *Felder v. Casey*, 487 U.S. 131 (1988), to support a contention that it would be inconsistent with federal law to apply § 893.82 in this case. Again, this

30

contention has no merit. In *Felder*, the court held that a state cannot impose notice of claim requirements on federal claims. Brown seeks to extend *Felder* to cover any situation in which state and federal claims are intertwined, but he cites no language from *Felder* or any other case that supports his interpretation. In fact, one of the cases he cites, *Badger Catholic*, 620 F.3d at 782, involved intertwined state and federal claims, but the court still required compliance with § 893.82.

Brown seems to believe that § 893.82 has somehow hindered his ability to bring his federal claims, but that is incorrect. Brown was free to bring his federal claims without regard to the state notice of claim requirements. It is true that, if Brown wanted to bring both state and federal claims in this case, compliance with Wisconsin's notice of claim requirements may have delayed this lawsuit until the state administrative process was complete. However, that is not a violation of Brown's federal rights; it is simply the necessary consequence of Brown's choice to bring state law claims that are subject to state notice of claim requirements. The statute of limitations in Wisconsin for a constitutional claim is six years, *Kennedy v. Huibregtse*, 831 F.3d 441, 442 (7th Cir. 2016), so Brown had plenty of time to complete the administrative process without risking any loss of his federal claims.

Finally, Brown says that Wis. Stat. § 893.82 "does not necessarily foreclose" his state law claims and "may not apply" because he still lived in Pennsylvania at the time he signed his employment contract. Dkt. 31, at 26. This is a curious suggestion because Brown relies solely on Wisconsin law to support all of his state law claims. It seems obvious that Brown must comply with Wisconsin notice of claim requirements if he wishes to sue Wisconsin public officials in Wisconsin under Wisconsin law. Further, although he cites various cases for the general proposition that Wisconsin rules for choice of law are unclear, he does not

develop an argument or cite any authority for the view that Pennsylvania law should apply in this case. Because courts presume that the law of the forum state applies unless a party shows otherwise, *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002), *State Farm Mutual Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662, Brown has forfeited this point. I am dismissing all of Brown's state law claims against the state defendants for his failure to comply with Wis. Stat. § 893.82(3).

**G. State law claims against county defendants**

The county defendants seek dismissal of all of Brown's state law claims against them for multiple reasons. In his opposition brief, Brown says that he "does not oppose dismissal without prejudice of [the claims for breach of contract and fraud] against Defendant Grant County, and against Defendant Keeney but only to the extent that the court finds that Keeney is a member of the Grant County Board." Dkt. 30 at 49. I am dismissing both claims as to both defendants with prejudice. The county defendants developed arguments on the merits as to both claims and both defendants, which triggered a duty on Brown to respond in kind. Because Brown does not explain why he believes that the dismissals should be without prejudice or that the dismissal of defendant Keeney should be contingent on a finding that he was a member of the county board, he has forfeited these arguments. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016).

This leaves Brown's claims for defamation, tortious interference with a contract, and "whistle-blower retaliation." I will consider each claim in turn.

**1. "Whistle-blower retaliation"**

Brown's arguments related to this claim are inconsistent. First, he says that the county defendants are wrong to seek dismissal of this claim by relying on the standard for common

law wrongful discharge. That was a mistake, Brown says, because he was an employee of UW-Extension, not Grant County. Dkt. 30, at 33. That allegation seems to be at odds with many of his other claims against the county, which seem to rely on a premise that he and the county had an employment relationship. Even setting aside that problem, the more immediate inconsistency is that Brown devotes the rest of this section of his brief to arguing that the county defendants may be held liable for wrongful discharge, citing only cases involving employees and employers. *E.g.*, *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, 254 Wis. 2d 347, 646 N.W.2d 365; *Strozinsky v. Sch. Dist. of Brown Deer*, 2000 WI 97, 237 Wis. 2d 19, 614 N.W.2d 443. If I accept as true Brown's allegation that the county defendants were not his employer, then he obviously cannot proceed on a claim that applies only to a former employer.

Brown also cites Wis. Stat. § 230.83, which is a whistleblower statute that protects state employees. Although it is not limited to retaliation by employers, it applies only to retaliation for the disclosure of certain information, and then only if the employee followed procedures outlined in Wis. Stat. § 230.81, which Brown does not allege that he did.

If Brown is asking this court to expand the common law rule against wrongful discharge to cover any retaliatory action taken against a public employee, I see no grounds for doing so. Brown points to no indication from the Wisconsin Supreme Court that it would adopt such a far-reaching rule. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Innovative state law claims should be brought in state court."); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985) ("Federal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing").

33

Even if I were to assume that the county had been Brown's employer, his allegations would not state a claim. As an initial matter, this claim has the same problem as many of Brown's other claims, which is that Brown does not allege that he was discharged at all, let alone that he was discharged improperly. Moreover, the common law claim for wrongful discharge applies only "when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶¶ 41-42, 362 Wis. 2d 100, 120, 862 N.W.2d 879, 889 (internal quotations omitted). As discussed in the context of some of Brown's other claims, Brown does not provide enough information in his complaint to allow the drawing of a reasonable inference that any of the defendants violated the law or required Brown to do so.

Accordingly, I am dismissing this claim. Because it is not clear whether Brown believes that he had an employment relationship with Grant County, I will allow him to replead a claim for wrongful discharge if he wishes to do so, but he will have to cure the problems with that claim discussed above.

### 2. Defamation and tortious interference with a contract against Grant County

In his amended complaint, Brown "alleges defamation and reputational damage due to the allegations against Plaintiff including but not limited to, an allegation of the submission of an improper invoice." Dkt. 14, at ¶ 67. He also "alleges that Defendants actively engaged in tortious and intentional interference with a contract by manufacturing 'issues' with Plaintiff to undermine the faculty contract and to undermine Plaintiff's ability to reasonably fulfill the contractual expectations." *Id.* at ¶ 68.

The county contends that it cannot be sued for defamation or tortious interference with a contract under Wis. Stat. § 893.80(4), which prohibits suits against a "governmental

subdivision . . . for the intentional torts of its officers, officials, agents or employees." (Section 893.80 includes its own notice of claim requirements, but the county does not seek dismissal on the ground that Brown failed to file a notice of claim, so I do not consider that issue.) A county is a governmental subdivision, *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 291, 588 N.W.2d 19, 21 (1999), and both defamation and tortious interference are intentional torts that are covered by § 893.80(4), *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 289, 531 N.W.2d 357, 363 (Ct. App. 1995). (Wrongful discharge would appear to be an intentional tort as well, but the county defendants do not seek dismissal of the wrongful discharge claim on this ground.) Although Brown questions whether Keeney was "a bona fide member of the Grant County Board by law," Dkt. 30, at 43, he does not question that Keeney was acting as an "agent" of the county while engaging in the conduct relevant to this case. (And if Brown did deny an agency relationship, then there would be no basis for holding the county liable for Keeney's conduct.)

Brown's only response to this argument is that the immunity granted in Wis. Stat. § 893.80(4) has exceptions, including one for "acts that are malicious, willful, and intentional." Dkt. 30, at 41. This view makes no sense. The immunity is *for* intentional conduct, so an exception for intentional conduct would be contrary to the language of the statute. In the case Brown cites, *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 24, 253 Wis. 2d 323, 337, 646 N.W.2d 314, 321, the court is reciting the exceptions for the immunity granted to *individual officers*, not political subdivisions. I conclude that the county is entitled to dismissal of both of these claims.

### 3. Defamation and tortious interference against Robert Keeney

In their opening brief, the county defendants argued that Brown's defamation claim is preempted by the Worker's Compensation Act, but they abandoned that argument in their reply brief, presumably because of Brown's allegation in his brief that he did not work for the county. They also argue that Keeney is entitled to immunity under Wis. Stat. § 893.80(4). In addition to granting immunity to governmental subdivisions, that provision grants immunity to agents of the county "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." The Wisconsin courts have interpreted this provision to mean that government officials are entitled to immunity for "any act that involves the exercise of discretion and judgment." *Lodl*, 2002 WI 71 at ¶ 21. The county says that Keeney's alleged acts involved discretionary decisions, but even if that is true, Brown alleges that Keeney acted maliciously, which, as noted above, is one of the exceptions to immunity for individual officials, so I could not grant immunity on that ground.

The problem with Brown's defamation claim against Keeney is the same as so many of Brown's other claims—his allegations are simply too vague to provide fair notice. A defamation claim under Wisconsin law requires the plaintiff to prove that a statement (1) was spoken to someone other than the person defamed; (2) is false; (3) is unprivileged; and (4) tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997); *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 941, 672 N.W.2d 306, 317.

Brown alleges that Keeney "insinuated" that Brown had submitted an "improper" invoice to the county. *Id.* at ¶¶ 49-51. However, Brown does not identify the alleged defamatory comment or otherwise explain what he means by the words "insinuated" and

"improper." Without more context, it is impossible to determine whether the comment might harm Brown's reputation. *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 808 (W.D. Wis. 2015) (dismissing defamation claim because "the allegations are too vague and conclusory as to the actual content of the alleged defamatory statements"). Brown says in his brief that the alleged defamation was "not limited to" Keeney's alleged statement about the invoice, but that allegation is even less informative than his allegation about the invoice. Accordingly, I am dismissing this claim, but I will give Brown leave to replead it.

As to the tortious interference claim, I agree with the county defendants that Brown has not stated a claim upon which relief may be granted. To prevail on a tortious interference claim, the plaintiff must prove the following elements: (1) a contract or a prospective contractual relationship between the plaintiff and a third party; (2) intentional interference with that relationship by the defendant; (3) a causal connection between the interference and damages; and (4) the lack of privilege or other justification for the interference. *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 14, 287 Wis. 2d 560, 574, 706 N.W.2d 667, 675.

In his amended complaint, Brown says that "defendants" interfered with his employment contract "by manufacturing 'issues.'" Dkt. 14, at ¶ 68. However, Brown does not identify any "issues" that Keeney "manufactured," so that allegation does not show any interference, intentional or otherwise. If Brown intended to raise a claim that Keeney interfered with Brown's contract by "insinuating" that he submitted an "improper" invoice, that allegation does not state a claim for multiple reasons: the allegation is too vague to provide notice of the claim; Brown has not alleged interference because UW-Extension did not terminate Brown's contract and he has not stated a claim for constructive discharge or

coerced resignation; and, even if Brown was forced to resign, he does not allege that Keeney's comment had anything to do with that decision. Accordingly, I am dismissing this claim, but I will permit Brown to replead it along with the other claims discussed in this order.

## H. John and Jane Doe defendants

Brown includes "John or Jane Does 1-25" in the caption of his amended complaint, but he does not discuss them anywhere in the body of his complaint. If Brown chooses to file another amended complaint and to include unnamed defendants in the caption, he should also include them in his allegations so both the named defendants and the court know which claims he intends to assert against a particular John or Jane Doe. If he can, Brown should identify each unknown defendant in the body of his complaint as a separate number, such as "John Doe 1," "John Doe 2," "John Doe 3," and so on. Any time Brown refers to an unknown defendant in his complaint, he should use this system. In addition, he should provide as many details as he can about any unnamed defendants so that they can be identified later in the case. Most important, Brown should explain how he believes each unnamed defendant violated his rights. If Brown does not provide enough information about the unnamed defendants to satisfy the Federal Rules of Civil Procedure, the court will not allow him to proceed against those defendants.

## I. Screening of amended complaint

The state defendants do not object to Brown's request to amend his complaint to correct its defects, but they ask the court to "screen the amended complaint and deny amendment for any claims that must be dismissed for any of the reasons already briefed by the Defendants." Dkt. 33, at 1.  In the interest of efficiency, I will grant that request, but with a caveat.  If the court screens the complaint to determine whether it states a claim upon

which relief may be granted, then the defendants will reserve any additional objections for a summary judgment motion in the event that any of Brown's claims survive the screening process. It will not serve the interest of judicial economy if the court's screening order is followed by additional motions to dismiss under Rule 12(b)(6), requiring yet another round of screening.

I will give defendants the choice. If any of them object to this proposal by the deadline set forth below, all defendants will have to file renewed motions to dismiss if they believe that Brown's amended complaint is deficient in any respect. If no defendants object, I will construe their silence as an agreement not to further challenge the sufficiency of the complaint in a Rule 12(b)(6) motion after the court screens the amended complaint.

ORDER

IT IS ORDERED that:

1. The motions to dismiss filed by defendants the State of Wisconsin, Scott Walker, Cathy Sandeen, Jason Beier, Richard Klemme, Matthew Hanson, Robin Vos, and Mary Lazich, Dkt. 24 and 35, and by defendants Grant County and Robert Keeney, Dkt. 18, are GRANTED.

2. Plaintiff Shannon Brown's amended complaint, Dkt. 14, is DISMISSED WITHOUT PREJUDICE as to the following claims:

   - coerced resignation or constructive discharge in violation of the due process clause;

   - associational discrimination;

   - political discrimination;

   - retaliation under the First Amendment;

   - discrimination because Brown is from another state;

   - wrongful discharge (but only as to defendants Grant County and Robert Keeney);

- defamation (but only as to defendant Keeney); and

- tortious interference with a contract (but only as to defendant Keeney).

As to these claims, Brown may have until February 17, 2017, to file an amended complaint that corrects the deficiencies described in this order and that otherwise complies with the Federal Rules of Civil Procedure.

3. If Brown does not respond to this order by February 17, the court will enter judgment in favor of the defendants and close this case.

4. Brown's claims under state law against defendants Cathy Sandeen, Jason Beier, Richard Klemme, and Matthew Hanson are DISMISSED for Brown's failure to comply with Wis. Stat. § 893.82(3).

5. The amended complaint, Dkt. 14, is DISMISSED WITH PREJUDICE as to all claims against defendants Scott Walker, Robin Vos, and Mary Lazich and any claim not specifically cited in paragraph 2 above.

6. If Brown files an amended complaint, defendants may have five days from the date of that filing to inform the court that they intend to file a motion to dismiss the complaint.  If no defendant files such a notice by the deadline, the court will screen the complaint to determine whether it states a claim upon which relief may be granted.

Entered January 25, 2017.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

40