IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHANNON BROWN,

                                         OPINION and ORDER

               Plaintiff,

                                      16-cv-346-bbc

      v.

MATTHEW HANSON, JASON BEIER,,
ROBERT KEENEY, JOHN PATCLE,
PATRICK SCHROEDER, GRANT LOY,
MARK STEAD, ROGER GUTHRIE,
DANIEL TIMMERMAN and JOHN OR JANE DOES 1-25,

               Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This lawsuit arises out of pro se plaintiff Shannon Brown's short tenure as an assistant professor at the University of Wisconsin-Extension in Grant County. Plaintiff says that he started the job in July 2015 after moving from Pennsylvania to Wisconsin, but the job did not turn out as he had hoped and he left in April 2016.

In his first amended complaint, plaintiff asserted 11 state and federal causes of actions against the state of Wisconsin and various public employees for alleged violations of his rights while he was employed by the University of Wisconsin-Extension. In an order

---

[1] For the purpose of clarity, I have amended the caption to include the defendants added to plaintiff's second amended complaint and I have omitted the defendants that plaintiff included in his first amended complaint but dropped from his second amended complaint. The dropped defendants are the State of Wisconsin, Scott Walker, Cathy Sandeen, Richard Klemme, Grant County, Robin Vos and Mary Lazich.

1

dated January 25, 2017, dkt. #36, the court granted in full motions to dismiss filed by two groups of defendants, but gave plaintiff leave to replead some of those claims. In response, plaintiff filed a second amended complaint, dropping some claims and defendants and adding several new defendants. Dkt. #38.

Two new motions to dismiss are now before the court, one filed by the state employees (defendants Matthew Hanson and Jason Beier), dkt. #48, and one filed by the Grant County employees (defendants Robert Keeney, John Patcle, Patrick Schroeder, Grant Loy, Mark Stead, Roger Guthrie and Daniel Timmerman), dkt. #50. In response to these motions, plaintiff filed both a brief in opposition and a "notice of voluntary partial dismissal." Dkt. ##52 and 55. The claims and defendants listed in the notice already were omitted from the second amended complaint, with the exception of the claims against defendant Jason Beier. Accordingly, I will dismiss all claims against that defendant.

Plaintiff's second amended complaint includes claims raising two federal legal theories and two state law legal theories, so jurisdiction arises under both 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction for related state law claims). First, plaintiff says that various defendants violated the First Amendment by retaliating against him in various way because he complained that "significant amounts of . . . educational programming funds were [being] directed to non-educational tasks." Sec. Am. Cpt. ¶ 79, dkt. #38. Second, plaintiff says that defendants violated the privileges and immunities clause because they had "a policy and practice of impermissible discriminatory animus towards out-of-state persons such as Plaintiff." Id. at ¶ 95. Third, plaintiff says that

defendant Robert Keeney defamed him by "impl[ying] that Plaintiff submitted an improper payment voucher." Id. at ¶ 98. Fourth, plaintiff says that defendants tortiously interfered with his employment contract in multiple ways.

Having reviewed the second amended complaint and the briefs submitted by the parties, I conclude that plaintiff has stated a claim upon which relief may be granted against defendant Hanson for retaliation under the First Amendment. Plaintiff has adequately alleged that defendant Hanson threatened to terminate his employment contract because plaintiff engaged in protected speech. In addition, I will allow plaintiff to proceed on a claim for tortious interference with a contract against defendants John Patcle, Patrick Schroeder, Grant Loy, Mark Stead, Roger Guthrie and Daniel Timmerman. Although that claim presents a closer question, I conclude that plaintiff has plausibly alleged that defendants intentionally interfered with his contract with the University of Wisconsin-Extension by diverting his attention to administrative tasks. However, for the reasons discussed below, I am dismissing the second amended complaint as to all other claims.

OPINION

A. Retaliation

1. Summary of allegations

Plaintiff alleges that, shortly after he was hired, the Wisconsin legislature made a "significant budget cut" to the University of Wisconsin-Extension. Sec. Am. Cpt. ¶ 37, dkt. #38. As a result, the dean of UW-Extension informed faculty in a video broadcast that they

"needed to re-focus educational programming." Id. at ¶ 39. After this, plaintiff became responsible for a number of "non-educational, Grant County government, administrative tasks." Id. at ¶ 40. Plaintiff does not say where the directive to perform more administrative tasks came from, but elsewhere in his complaint, he says that defendant Stead, a county employee, "directed" him "to spend 40% time" on certain tasks for Grant County, which suggests that the directives came at least in part from Grant County staff. Although plaintiff says that he was employed by the University of Wisconsin-Extension alone, he says that he was "accountable" to Grant County, id. at ¶ 20, though he does not explain the extent to which the county had authority over him.

The administrative tasks that plaintiff was required to perform included reviewing vouchers for county expenses, administering county tourism grants and managing "tourism brochure development." Id. at ¶ 40. Plaintiff objected to these requirements, believing that it was "a significant misdirection of state and federal educational programing resources." Id. He complained not only about his own situation, but what he believed to be "a wider problem" at the UW-Extension. Id. at ¶ 83.

In addition, plaintiff complained that the "county tasks" included "apparent illegality, violations of state policy and financial discrepancies." Id. at ¶ 42. Examples of "alleged illegalities" included "submitting apparently inaccurate invoices to the State for payment," "pressure to submit inaccurate time sheets to the State," "copyright infringement/theft of services," "tampering with official records" and "approving alleged improper payment of government expenses." Id. Plaintiff does not explain the way in which invoices were

"inaccurate," what sort of "tampering" occurred, the nature of the "copyright infringement" or how any payments were "improper."

Plaintiff alleges in his summary of claims that he suffered retaliation in the following ways as a result of his speech:

- sometime before October 2015, unknown Grant County employees informed Bev Doll and Ted Bay (who plaintiff identifies as "county department co-chairs" and part of his "reporting structure," id. at ¶ 19.d) that they had "issues" with plaintiff because of his speech and wanted him to be fired, id. at ¶¶ 84.a and 84.b;

- on March 16, 2016, just before plaintiff's faculty review was scheduled to begin, defendant Matthew Hanson (the Southwest Regional Director of the UW-Extension) discussed unspecified "issues" that unnamed individuals had with plaintiff, id. at ¶¶ 58 and 84.c;

- on March 16, 2016, defendant Hanson allowed county employees to attend plaintiff's faculty review and to question plaintiff during the review, in violation of school policy, id. at 59 and 84.c;

- on March 16, 2016, defendant Hanson "threatened the possibility of Plaintiff's losing his faculty appointment under the alleged '60-day clause,'" id.;

- on March 16, 2016, during plaintiff's faculty review, defendant Keeney alleged that plaintiff "submitted an improper payment voucher," id. at ¶ 84.e;

- on March 17, 2016, defendant Hanson sent plaintiff an email stating that Hanson "wished to discuss withdrawing support from Plaintiff, ending plaintiff's employment," id. at ¶ 84.d.

2. Elements of First Amendment retaliation claim

A plaintiff must show three things to prevail on a retaliation claim under the First Amendment. First, he must show that he engaged in speech or conduct that is protected by

the First Amendment. Second, he must have suffered a deprivation that likely would deter future First Amendment activity. Third, his protected activity must be "at least a motivating factor" in the defendants' actions. Graber v. Clarke, 763 F.3d 888, 894 (7th Cir. 2014); Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008).

Defendant Hanson challenges plaintiff's claims on both the first and second elements. The county defendants focus on the second element, but also discuss the third element. I will consider each argument in turn.

3. Protected speech

"A public employee's speech is constitutionally protected only when he speaks 'as a citizen' on matters of public concern." Roake v. Forest Preserve District of Cook County, 849 F.3d 342, 346 (7th Cir. 2017). If he speaks "pursuant to his official duties," id. (alteration omitted), or simply out of "pure personal interest," Kristofek v. Village of Orland Hills, 832 F.3d 785, 794 (7th Cir. 2016), the speech is not protected.

Defendant Hanson devotes only one paragraph of his brief to this issue, stating without elaboration that plaintiff's complaints about "misdirection of resources" were made "as an employee [rather than a citizen] on a matter of personal concern." Hanson Br., dkt. #49, at 10. Certainly, plaintiff's allegations suggest strongly that a significant motivation for his speech was his personal dissatisfaction with his job duties. However, Hanson ignores the allegations that plaintiff complained generally about what he viewed to be a statewide problem and about what he viewed to be a threat to the educational mission of the UW-

Extension. (I do not consider plaintiff's allegations about "illegalities" because those are too vague to allow a determination whether they raise issues of public concern.)

Plaintiff's allegations regarding improper use of public money and the operation of the UW-Extension are sufficient at the pleading stage to show that plaintiff was engaging in protected speech. Wainscott v. Henry, 315 F.3d 844, 849 (7th Cir. 2003) ("An employee's ability to highlight the misuse of public funds or breaches of public trust is a critical weapon in the fight against government corruption and inefficiency."). Speech that criticizes the operation of the government can be speech on a matter of public concern, even when the plaintiff is motivated in part by personal interests. Kristofek, 832 F.3d at 795. If the facts show at summary judgment or trial that plaintiff was not complaining about governmental misconduct and was only complaining about perceived personal mistreatment, then this claim may be subject to dismissal, but plaintiff's allegations are adequate at the pleading stage to show that he spoke as a citizen on a matter of public concern.

4. Adverse actions

a. Legal standard

Both sets of defendants devote most of their argument with respect to the First Amendment claims to the question whether plaintiff has adequately alleged that any of the defendants subjected him to conduct that is sufficiently adverse to support a First Amendment claim. Courts frame this question as whether the defendant's conduct would deter "a person of ordinary firmness" from engaging in protected speech in the future.

Hughes v. Scott, 816 F.3d 955, 956 (7th Cir. 2016).  Thus, the standard is objective rather than subjective.  Cockroft v. Moore, 638 F. Supp. 2d 1024, 1031 (W.D. Wis. 2009).

Plaintiff seems to believe that there is a different standard for evaluating defendant Hanson's conduct and the county defendants' conduct because Hanson was plaintiff's employer and the county defendants were not.  (There is some dispute about whether plaintiff had an employment relationship with the county, but I need not resolve that dispute to decide the pending motions.)  Plaintiff is incorrect.  In the First Amendment setting, the standard for proving that an action is sufficiently adverse is the same regardless who the defendant is.  Gekas v. Vasiliades, 814 F.3d 890, 895 (7th Cir. 2016) (applying standard outside employment context); Hobgood v. Illinois Gaming Board, 731 F.3d 635, 643 (7th Cir. 2013) (applying standard in employment context).

Plaintiff cites Graber, 763 F.3d at 894, a case involving alleged retaliation in the employment context in which the court used the phrase "adverse employment action" as shorthand for this element of a retaliation claim, but the court was not purporting to change the standard to require an employment nexus in certain cases.  Rather, the court still articulated the standard as whether the defendant's conduct was "sufficiently adverse so as to deter the exercise of the free speech."  Id.  In fact, in the case cited in Graber for this element of the claim, the court said nothing about an "adverse employment action," but asked simply whether the plaintiff "has suffered a deprivation likely to deter free speech." Vose v. Kliment, 506 F.3d 565, 569–70 (7th Cir. 2007). Thus, this element does not become stricter or more lenient depending on whether the defendant has an employment relationship

with the plaintiff.

Of course, the existence of an employment relationship (or any other power a defendant has over the plaintiff) could be relevant in determining whether it is likely that a person would be deterred by a defendant's conduct. However, that does not mean the standard is different for each defendant; it simply means that the standard is sensitive to the context in which the alleged retaliation occurred.

b. Defendant Hanson

Plaintiff does not allege that defendant Hanson or anyone else fired him. Rather, plaintiff says that, after he took a scheduled vacation, he sent defendant Hanson an email stating, "My family and I discussed the situation. My last day with UW Extension is Friday, April 15, 2016." Sec. Am. Cpt. ¶ 72, dkt. #38. Although plaintiff included a claim for constructive discharge in his first amended complaint, he dropped that claim in his second amended complaint. Thus, plaintiff's resignation cannot qualify as an adverse action. Andrews v. CBOCS West, Inc., 743 F.3d 230, 235 (7th Cir. 2014) ("In the absence of circumstances suggesting a constructive discharge, an employee who voluntarily resigns cannot be said to have experienced an adverse employment action."). Rather, the question is whether any of the actions defendant Hanson allegedly took before plaintiff resigned would be likely to deter a person of ordinary firmness from engaging in protected conduct.

Perhaps the most significant action Hanson allegedly took was to "threaten[] the possibility of Plaintiff's losing his faculty appointment under the alleged '60-day clause.'"

Cpt. ¶ 59, dkt. #38. Plaintiff does not explain in his complaint what the "60-day clause" is, even though the court raised that question in the January 25, 2017 order dismissing the first amended complaint. Dkt. #36 at 5. In his opening brief, defendant Hanson says that the "60-day clause" can be invoked by the employee only, not the employer, citing a provision in the contract that plaintiff attached to the complaint. Dkt. #38-1, ¶ 9 ("You may request release from this appointment with a minimum of 60 days written notice . . . ."). In his opposition brief, plaintiff says that Hanson was referring to a *different* 60-day clause in a contract between UW-Extension and Grant County. Dkt. #54, at 21-22. Plaintiff did not attach that agreement to his complaint, but he says that the clause "eliminates co-sponsorship of the faculty position in a county under the UWEX-County Contract—essentially, ending a faculty member's appointment in the county." Id. at 22. Although plaintiff did not attach that contract to his complaint and he did not include any allegations in his second amended complaint about the provision he now cites, I can consider new allegations in a brief in opposition to a motion to dismiss. Smith v. Dart, 803 F.3d 304, 311 (7th Cir. 2015).

Plaintiff does not allege expressly in his complaint or brief that defendant Hanson had the authority to invoke the "60-day clause." However, at the pleading stage, it is reasonable to infer that he did from plaintiff's allegations that Hanson was the Southwest Regional Director of UW-Extension, that Hanson made the decision to hire plaintiff, that Hanson signed plaintiff's employment contract, that plaintiff reported to Hanson and that Hanson conducted plaintiff's annual performance reviews. Sec. Am. Cpt. ¶¶ 2, 16-17, 19 and 22.

Neither side cites any controlling authority on the question whether a threat to fire

an employee may be sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights. However, cases from courts in this circuit and others support a conclusion that such threats may be sufficient under some circumstances. Fritz v. Charter Township of Comstock, 592 F.3d 718, 725-26 (6th Cir. 2010) ("A person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior."); Martin v. Gates, 2008 WL 4657807, at *10 (D. Hawaii 2008) (collecting cases in which courts determined that threats were sufficient); Citizens For Community Action v. City of Chicago, 455 F. Supp. 2d 802, 813 (N.D. Ill. 2006) ("A threat to fire Randazzo for his association with Strnad and CCA would be sufficient to deter Randazzo from engaging in protected activity."). See also Pantoja v. American NTN Bearing Manufacturing Corp., 495 F.3d 840, 849 (7th Cir. 2007) (warnings may be sufficiently adverse to sustain retaliation claim under Title VII). Accordingly, I conclude that plaintiff has adequately alleged this element of his claim against defendant Hanson.

Defendants suggest that any threat to terminate plaintiff after 60 days was not sufficiently adverse to sustain a claim because plaintiff's contract was set to expire shortly after that anyway, on June 30, 2016. However, this argument ignores the possibility that plaintiff's contract would be renewed. Plaintiff alleges that he was on "probationary tenure status" and that "[l]ongstanding institutional practice makes contract renewal pro forma." Sec. Am. Cpt. ¶ 21, dkt. #38. Because a "refusal to renew a contract is an adverse employment action," Walker v. Board of Regents of University of Wisconsin System, 300

F. Supp. 2d 836, 852 (W.D. Wis. 2004), plaintiff's allegations are sufficient regardless whether defendant Hanson's alleged statement is viewed as a threat to terminate plaintiff or simply not to renew his contract.

Because defendant Hanson's alleged threat is sufficient at the pleading stage to show an adverse action, I need not decide whether any of Hanson's other alleged conduct was sufficiently adverse on its own.


c. Defendant Keeney

Plaintiff's only allegation against defendant Keeney (the chairman of the Grant County Board of Supervisors) related to this claim is that during the March 16, 2016 hearing, Keeney asked plaintiff why he "submitted an improper invoice to the County." Sec. Am. Cpt. ¶ 67, dkt. #38. Plaintiff says that Keeney "knew his statement was false." Id. at ¶ 99.

For the purpose of defendant Keeney's motion to dismiss, I will assume that defamatory statements may be sufficiently adverse under some circumstances to sustain a retaliation claim under the First Amendment. E.g., DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995) ("false accusations" may constitute retaliation under First Amendment). However, in this case, plaintiff has not plausibly alleged that a person of ordinary firmness would be deterred by Keeney's alleged question.

To begin with, plaintiff does not explain what defendant Keeney believed to be "improper" about the invoice. This is important because an allegation that plaintiff knowingly included false information in an invoice would be much more likely to create a

chilling effect than a suggestion that plaintiff simply made a mistake. It is impossible to tell from plaintiff's allegations which type of allegation Keeney was making, a problem the court noted in January 25, 2017 order. Dkt. #36 at 36-37 ("Brown does not identify the alleged defamatory comment or otherwise explain what he means by the word[] . . . 'improper.'"). Despite the court's instruction that he needed to be more specific, plaintiff failed to provide any additional information in his second amended complaint. Plaintiff is not entitled to yet another opportunity to clarify this allegation.

In any event, plaintiff's other allegations in his second amended complaint make it clear that defendant Keeney's alleged question would not deter a person of ordinary firmness from speaking out. Plaintiff alleges that "immediately" after Keeney asked his question, two "UWEX co-chairs . . . defended Plaintiff and explained to Defendant Hanson that the invoice was both proper and approved." Sec. Am. Cpt. ¶ 67, dkt. #38. After that, the meeting concluded. Id. Plaintiff does not allege that Keeney or anyone else threatened to take any action against him because of the invoice. In fact, plaintiff says elsewhere in his complaint that Keeney "admitted [during the March 16, 2016 hearing] that no material issues existed with Plaintiff, recognized Plaintiff's educational work, admitted that some County funds that Plaintiff was 'responsible' for were being misdirected, and indicated understanding of the challenges raised by the recent budget cuts on UWEX necessitating changes." Id. at ¶ 66.

In short, nothing in plaintiff's complaint supports a conclusion that Keeney's question would have a chilling effect on a person of ordinary firmness. Accordingly, I am dismissing this claim as to defendant Keeney.

d. Other defendants

Plaintiff alleges that defendants John Patcle, Patrick Schroeder, Grant Loy, Mark Stead, Roger Guthrie and Daniel Timmerman were members of the "Grant County Ag & Extension Committee." Id. at ¶¶ 5-10. I agree with these defendants that plaintiff does not identify any adverse actions that they took against him.

In his opposition brief, plaintiff cites various paragraphs of his second amended complaint as providing support for the view that there is a "significant nexus between the Committee Members and the complained of First Amendment violations." Plt.'s Br., dkt. #55, at 21. However, none of the cited actions qualify as adverse actions that would deter a person of ordinary firmness from exercising his rights.

Plaintiff alleges that committee members: (1) "questioned Plaintiff about Plaintiff's talking about the County's noneducational administrative tasks with others," Sec. Am. Cpt. ¶ 43, dkt. #38; (2) "disrupted Plaintiff's accountability report at the September 2015, public, Ag & Extension Committee Meeting," id. at ¶ 51.a; (3) "directed Plaintiff to spend 40% time just on administering the Grant County Tourism Grants knowing that this was improper," id. at ¶ 51.b; and (4) "dismissed" any "discussion of the misdirection of resources," id. at ¶ 51.c.

With respect to the first allegation, questioning plaintiff about his speech is a "minor annoyance" and not a materially adverse action. Breneisen v. Motorola, Inc., 512 F.3d 972, 981 (7th Cir. 2008). Even critical comments generally are not sufficiently severe to sustain a civil rights claim. Brown v. Advocate South Suburban Hospital, 700 F.3d 1101, 1107-08

(7th Cir. 2012); <u>Crews v. City of Mt. Vernon</u>, 567 F.3d 860, 869-70 (7th Cir. 2009). Rather, speech may rise to the level of retaliation under the First Amendment if it involves a "threat, coercion, or intimidation intimating punishment." <u>Hutchins v. Clarke</u>, 661 F.3d 947, 957 (7th Cir. 2011). Defendants' alleged questioning does not fall into any of those categories.

With respect to the second allegation, plaintiff alleges that committee members "disrupted" the September 2015 meeting by "suggest[ing]" that "Plaintiff should not be attending professional development" and that "Plaintiff should not bring 'Madison ideas' to Grant County." Sec. Am. Cpt. ¶ 51.a, dkt. #38. In addition, plaintiff says that members "expressed skepticism regarding education in general and why we [the County] need educated people doing these tasks" and "stated that even a professor must do the County's tasks." <u>Id.</u> Again, these are simply unpleasant comments with which plaintiff disagrees. The committee members had their own rights under the First Amendment to express their views. <u>Owens v. Ragland</u>, 313 F. Supp. 2d 939, 948 (W.D. Wis. 2004) (in context of First Amendment retaliation claim, court must consider First Amendment rights of both sides).

With respect to plaintiff's allegation that defendants required him to devote his time to county administrative tasks, plaintiff is conflating issues. Plaintiff alleges that defendants retaliated against him after he complained about being required to perform administrative tasks. He does *not* allege that he was assigned administrative tasks *because* of his speech. If plaintiff means to argue that the assignments were retaliatory, that claim fails because plaintiff does not identify any speech that triggered the assignments.

Finally, there is no merit to plaintiff's argument that committee members retaliated against him by failing to seriously consider his objections about the assignment of administrative tasks. Plaintiff cannot be punished for exercising his First Amendment rights, but his rights do not extend so far as to require public officials to agree with his views and take the actions he wants them to take. Trentadue v. Integrity Committee, 501 F.3d 1215, 1237 (10th Cir. 2007) ("[T]he right to petition confers no attendant right to a response from the government"); Baltoski v. Pretorius, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("The right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials.").

Alternatively, plaintiff says that he should be allowed to proceed against the committee members under the First Amendment because they may be the John Doe county employees, who plaintiff says had "issues" with him and wanted him to be fired. Plaintiff does not provide any grounds for believing that the committee members are the John Doe employees, but even if they are, plaintiff has not stated a claim under the First Amendment as to those employees.

Plaintiff does not allege that the committee members had any authority over his employment. Rather, he alleges that he "was assured [by defendant Hanson] that the County cannot fire a UWEX faculty member," Sec. Am. Cpt. ¶ 45, dkt. #38, so there is no basis for inferring that the Does' opinions would deter hin from speaking. In fact, plaintiff says that he learned about the complaints of the Does from the "department co-chairs," who made it clear that they were "upset" with "the County," *not* with plaintiff. Sec. Am. Cpt. ¶ 44, dkt.

#38.  Plaintiff also alleges that the unspecified "issues" had nothing to do with his "employment performance."  Id. at ¶ 58.  A person of ordinary firmness would not be deterred by vague statements from an unknown source when there was no indication that any concerns the unnamed individuals had were shared by anyone with authority over plaintiff.  Accordingly, I am dismissing the First Amendment claims against the committee members and the John Doe defendants.

5.  Intent

Defendant Hanson does not seek dismissal of plaintiff's First Amendment retaliation claim on the ground that plaintiff failed to adequately allege that Hanson acted adversely because plaintiff made statements that are protected by the First Amendment.  Because I am dismissing plaintiff's First Amendment retaliation claim against all other defendants on other grounds, it is unnecessary to consider this element at this stage of the proceedings.

B.  Privileges and Immunities

Under the privileges and immunities clause of the United States Constitution, "[t]he citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const., art. IV, § 2, cl. 1. The purpose of the clause is to "plac[e] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." McBurney v. Young, 133 S.Ct. 1709, 1714 (2013) (internal citations and quotations omitted).

Plaintiff says that defendants violated the privileges and immunities clause by treating him less favorably because he was from Pennsylvania rather than Wisconsin.  He identifies the following instances of alleged discrimination:

- "Grant County had a recent history of very rapid turn-over in faculty appointments over the past five years with at least three of the five persons leaving being out-of-staters," dkt. #55 at 32 (citing Sec. Am. Cpt. ¶¶ 28, 45, 88, dkt. #38);

- "[C]omments were made about not hiring out-of-staters," id. (citing Sec. Am. Cpt. ¶¶ 44, 51, 89 and 90-94, dkt. #38);

- "Plaintiff was specifically told that his not being a 'local' contributed to the difficulties with the County," id. (citing Sec. Am. Cpt. ¶ 90, dkt. #38);

- "Plaintiff shows a pattern of hires starting in January 2016, apparently including the replacement for Plaintiff, that implement the discriminatory no-out-of-staters employment policy," id. (citing Sec. Am.Cpt. ¶¶ 90-94, dkt. #38);

- "Plaintiff pleads a seven-months campaign to disrupt Plaintiff's educational programming and generally harass Plaintiff," id. (citing Sec. Am. Cpt. ¶¶ 43, 45, 51 and 58).

I conclude that none of these allegations state a claim upon which relief may be granted.

As an initial matter, as the court noted in the January 25, 2017 order, it is highly unlikely that the privileges and immunities clause applies to this case.  Although the Supreme Court has held that the privileges and immunities clause may apply in the employment context, this is only when the state government has placed widespread restrictions on an out-of-state resident's ability to obtain private employment.  Hicklin v. Orbeck, 437 U.S. 518, 529 (1978).  In United Building & Construction Trades Council of Camden County v. Mayor and Council of City of Camden, 465 U.S. 208, 219 (1984), the Court stated in dicta

that "[p]ublic employment . . . is qualitatively different from employment in the private

sector; it is a subspecies of the broader opportunity to pursue a common calling."  Relying on

that dicta, the Court of Appeals for the Third Circuit has held that "direct public employment

is not a privilege or fundamental right protected by the Privileges and Immunities Clause of

Article Four" because the inability to work for the government does not prevent someone

from pursuing his occupation to the same extent as a ban on private employment.  Salem

Blue Collar Workers Association v. City of Salem, 33 F.3d 265, 270 (3d Cir. 1994).

The parties debate the meaning of the dicta in Camden and whether this court should

follow Salem.  But even if I assume that the privileges and immunities clause might apply to

public as well as private employment, plaintiff cites no authority for the view that the clause

applies to the policies and practices of a single state employer, in this case the University of

Wisconsin-Extension.  The clause applies only when a restriction affects an interest that is

"'fundamental' to the promotion of interstate harmony."  Camden, 465 U.S. at 219.  The

primary case plaintiff cites, Hicklin, involved a state law that required preferential treatment

for in-state residents with respect to any job related to oil and gas in the state, including those

for subcontractors.  As noted in another case that plaintiff cites, "the Privileges and

Immunities Clause protects the right of citizens to ply their trade, practice their occupation,

or pursue a common calling." McBurney, 133 S. Ct. at 1715.  The decisions of a single

employer does not prevent an out-of-state resident from doing any of those things in a

substantial way.  Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 280 (1985)

("[O]ne of the privileges which the Clause guarantees to citizens of State A is that of doing

business in State B on terms of substantial equality with the citizens of that State.'") (emphasis added).

Even if the privileges and immunities clause applies to the decisions of a single employer, plaintiff's claim has an even more fundamental problem, which is that he does not identify any way in which any of the defendants restricted his ability to work in Wisconsin. After all, defendants *hired* plaintiff and, as discussed above, he admits that he was not fired from his job. The conduct and statements that plaintiff cites to support his claim might help to show that some of the defendants had a preference for "locals," but that preference could not violate plaintiff's rights under the privileges and immunities clause if it did not actually restrict plaintiff's employment. For example, it does not violate plaintiff's rights if other employees left the UW-Extension or if plaintiff's replacement was a Wisconsin resident, a point the court made in the January 25, 2017 order. Dkt. #36 at 28 ("Both of these allegations are about the treatment of other employees, not Brown. Brown does not have standing to raise the claims of another party. Kowalski v. Tesmer, 543 U.S. 125, 129 (2004).").

The closest plaintiff comes to showing that defendants' alleged animus affected his employment is the statement in his brief that he was subjected to "harass[ment]" as part of "a seven-month[] campaign to disrupt [his] educational programming." Dkt. #55 at 32 (citing Sec. Am. Cpt. ¶¶ 43, 45, 51 and 58). However, the "harassment" he cites is the same conduct by county employees that he cited in support of his First Amendment retaliation claim. (Plaintiff does not allege that defendant Hanson threatened to fire him because he was

from another state, so I need not consider that issue.) Asking plaintiff questions, disagreeing with his views and requiring him to perform administrative tasks are not fundamental restrictions on plaintiff's ability to practice his profession. Accordingly, I am dismissing plaintiff's claim under the privileges and immunities clause for plaintiff's failure to state a claim upon which relief may be granted.

Plaintiff includes a sentence in his opposition brief that he "would also seek leave to amend and add an alternative pleading of Equal Protection," dkt. #55, at 32, but I conclude that plaintiff has forfeited a claim under the equal protection clause. In the January 25, 2017 order, the court noted that plaintiff's claim under the privileges and immunities clause could be reframed as a claim under the equal protection clause. Dkt. #36 at 27. Despite the court's suggestion, plaintiff chose to focus solely on the privileges and immunities clause in his second amended complaint, leading defendants to do the same thing in their motions to dismiss. Johnson v. Cypress Hill, 641 F.3d 867, 873 (7th Cir. 2011) ("There must be a point at which a plaintiff makes a commitment to the theory of [his] case.") (internal quotations and alterations omitted).

In any event, even if I considered plaintiff's claim under an equal protection theory, it would not state a claim upon which relief may be granted. The conduct plaintiff cites as "harassment" is simply not sufficiently adverse to qualify as discrimination that violates the equal protection clause. Cf. Lloyd v. Swifty Transportation, Inc., 552 F.3d 594, 602 (7th Cir. 2009) (reprimands not sufficiently severe to support employment discrimination claim). Further, plaintiff's own allegations contradict any view that he was assigned administrative

tasks because he was from another state. Rather, plaintiff alleges that the changes to his job were the result of budget cuts imposed by the state legislature. Sec. Am. Cpt. ¶¶ 37-40 and 83, dkt. #38; Alam v. Miller Brewing Co., 709 F.3d 662, 666-67 (7th Cir. 2013) (if plaintiff includes inconsistent allegations in complaint, more specific allegations are controlling).

## C. Defamation

A defamation claim under Wisconsin law requires the plaintiff to prove that a statement (1) was spoken to someone other than the person defamed; (2) is false; (3) is unprivileged; and (4) tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Torgerson v. Journal/Sentinel, Inc., 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997); Hart v. Bennet, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 941, 672 N.W.2d 306, 317.

In plaintiff's first amended complaint, his only allegation relating to defamation was that defendant Keeney "insinuated" during the March 16, 2016 hearing that plaintiff had submitted an "improper" invoice to the county. First Am. Cpt., dkt. #14, at ¶¶ 49-51. The court concluded that the allegation did not state a claim because plaintiff did "not identify the alleged defamatory comment or otherwise explain what he mean[t] by the words 'insinuated' and 'improper.' Without more context, it is impossible to determine whether the comment might harm Brown's reputation." Dkt. #36 at 36-37 (citing Wesbrook v. Ulrich, 90 F. Supp. 3d 803, 808 (W.D. Wis. 2015) (dismissing defamation claim because "the

allegations are too vague and conclusory as to the actual content of the alleged defamatory statements")).

Plaintiff's allegations in his second amended complaint have not moved him any closer to the mark. He now says that defendant Keeney "implied [during the March 16, 2016 hearing] that Plaintiff submitted an improper payment voucher." Sec. Am. Cpt. ¶ 98, dkt. #38. That is essentially the same allegation that the court found to be insufficient in the January 25, 2017 order. Plaintiff still does not identify the statement Keeney made or explain what Keeney believed to be "improper" about the invoice. Accordingly, I conclude that plaintiff has failed to state a claim upon which relief may be granted with respect to his defamation claim against defendant Keeney. Further, because the court gave plaintiff an opportunity to provide more information but he chose not to do so, it would be futile to allow plaintiff to amend his complaint again. Alam, 709 F.3d at 666-67 ("Leave to replead need not be allowed in cases of repeated failure to cure deficiencies by amendments previously allowed.") (internal quotations omitted). This conclusion makes it unnecessary to consider defendant Keeney's alternative argument that plaintiff's defamation claim is preempted by the Wisconsin Worker's Compensation Act.

### D. Tortious Inteference

To prevail on a claim for tortious interference of a contact, a plaintiff must prove the following elements: (1) a contract or a prospective contractual relationship between the plaintiff and a third party; (2) intentional interference with that relationship by the

defendant; (3) a causal connection between the interference and damages; and (4) the lack of privilege or other justification for the interference. <u>Wolnak v. Cardiovascular & Thoracic Surgeons of Central Wisconsin, S.C.</u>, 2005 WI App 217, ¶ 14, 287 Wis. 2d 560, 574, 706 N.W.2d 667, 675.

I understand plaintiff to be alleging that county employees interfered with his employment contract in two ways: (1) attempting to get him fired; and (2) requiring him to perform administrative tasks for the county at the expense of educational programming. I conclude that the first allegation fails to state a claim upon which relief may be granted, but I will allow plaintiff to proceed on the second claim.

Plaintiff's allegation that unknown county employees attempted to get him fired is a nonstarter because it is undisputed that those efforts were unsuccessful. In fact, as noted above, plaintiff alleges that UW-Extension administrators assured him that they rebuffed the efforts of the county employees, who had no authority to fire plaintiff.

Plaintiff cites <u>Wolnak</u>, 2005 WI App 217 at ¶ 36, for the proposition that he does not have to prove he was fired because interference includes not just "abandonment or nonperformance of the contract" but also "making the plaintiff's performance of the contract more expensive or onerous." Plaintiff has stated the law correctly, but that law does not support his claim. He identifies no way in which the efforts of the county employees made his ability to perform his contract more expensive or onerous. Again, plaintiff alleges that state administrators rejected the complaints of county employees. He does not allege that the University of Wisconsin-Extension disciplined him or even conducted an investigation into

any concerns raised by the county. Accordingly, I am dismissing the tortious interference claim as to the allegation that unknown county employees tried to get plaintiff fired.

As to plaintiff's second allegation, that members of Agriculture and Extension Committee interfered with his contract by giving him county administrative tasks to perform, it is a close question, but I conclude that plaintiff has pleaded the bare minimum facts necessary to state a claim for tortious interference with a contract. On one hand, this claim seems questionable because the contract plaintiff attaches to his complaint contemplates that plaintiff would be "accountable to the Agriculture and Extension Education Committee of Grant County regarding county program needs . . . and to the Grant County Cooperative Extension department head for county administrative matters." Sec. Am. Cpt., dkt. #38, exh. 1, ¶ 13. It is somewhat of a stretch to say that defendants were "interfering" with plaintiff's contract when the contract itself required plaintiff to perform county tasks. On the other hand, plaintiff alleges that the committee members were requiring him to perform administrative tasks at the expense of his educational programming and went so far as to direct plaintiff to limit the time he spent on that programming. Id. at ¶ 105. If that is true, it may be possible for plaintiff to prove that the committee members intentionally interfered with his ability to perform his contractual duties with the UW-Extension, so I am denying the county defendants' motion to dismiss as to this claim. Of course, at summary judgment or trial, plaintiff will have to adduce specific evidence supporting each element of tortious interference with a contract.

ORDER

IT IS ORDERED that

1.  Pursuant to plaintiff Shannon Brown's motion for voluntary dismissal, dkt. #52, plaintiff's second amended complaint is DISMISSED as to defendant Jason Beier.

2. The motion to dismiss filed by defendants Matthew Hanson and Jason Beier, dkt. #48, is DENIED as to plaintiff's claim that defendant Hanson retaliated against plaintiff for exercising his right to free speech.  The motion is GRANTED in all other respects.

3.  The motion to dismiss filed by defendants Robert Keeney, John Patcle, Patrick Schroeder, Grant Loy, Mark Stead, Roger Guthrie and Daniel Timmerman, dkt. #50, is DENIED as to plaintiff's claim that defendants Patcle, Schroeder, Loy, Stead, Guthrie and Timmerman tortiously interfered with plaintiff's contract with the University of Wisconsin-Extension by requiring him to perform county tasks.  The motion is GRANTED in all other respects.  The second amended complaint is DISMISSED as to defendant Keeney and the John Doe defendants.

4.  All defendants included in the first amended complaint but omitted from the second amended complaint, including the State of Wisconsin and Grant County, are DISMISSED.

Entered this 19th day of June, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

26